[Cite as *Nicely v. Weaver*, 2013-Ohio-1621.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARY NICELY | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
|     Appellant | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2012 CA 00134 |
| LINDA WEAVER | |
|     Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common
Pleas, Juvenile Division, Case No. 2009
JCV 00710

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    April 15, 2013

APPEARANCES:

For Appellant        For Appellee

JENNIFER ROBERTS        KAREN S. DUMMERMUTH
401 West Tuscarawas Street, Suite 300    349 East High Avenue
Canton, Ohio 44702        New Philadelphia, Ohio 44663

*Wise, J.*

{¶1} Appellant Mary Nicely appeals from the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted legal custody of her two sons to Appellee Linda Weaver, the former foster parent of the two boys. The relevant facts leading to his appeal are as follows.

{¶2} Appellant Nicely is the biological mother of C.H., born in 2003, and S.H., born in 2004.[1] Shawn H., the father of the boys, was incarcerated during the trial court proceedings in the case sub judice and is not a participant in the present appeal.

{¶3} When C.H. was about seven months old, the Wayne County (Ohio) Children Services Board obtained temporary custody of the boys after C.H. suffered a leg injury caused by suspected abuse. In that case, from 2003 to 2006, Appellee Linda Weaver had foster placement of C.H. and S.H. In 2006, the boys were returned to appellant under an order of protective supervision in Wayne County.

{¶4} On June 4, 2009, Appellee Weaver filed a motion in Stark County for custody (non-relative) of C.H. and S.H.[2] The trial court granted temporary custody to appellee via an ex parte order, and a further hearing was set for July 27, 2009. As a result of said hearing, appellant-mother was granted weekly supervised visits with the two boys. The court subsequently appointed Attorney Robert Abney as the guardian ad litem and set the matter for a full evidentiary hearing commencing on September 16, 2009. The custody dispute was heard on that date, as well as on October 14, 2009 and January 6, 2010.

---

[1]  Appellant's name is alternately spelled "Nicley" on a number of trial court filings.
[2]  Because this was a new case number, appellee subsequently amended her "motion" to a complaint for custody.

{¶5}   On July 13, 2010, although a final decision had not yet been issued, the trial court ordered a review hearing to be conducted on August 16, 2010. An additional hearing was then set for November 24, 2010. On that date, appellant and appellee appeared with counsel and purportedly read an agreement into the record. Appellee was directed to file a final judgment entry, but this did not occur. The trial court judge thereafter retired from the bench. He was reappointed in August 2011 to finalize the case sub judice. A final evidentiary hearing was conducted on December 13, 2011, and the final review hearing was held on April 24, 2012.

{¶6}   On June 14, 2012, the trial court issued a judgment entry, with thirteen separate pages of findings of fact and conclusions of law, which found Appellant and Shawn H. to be unsuitable and granted legal custody of C.H. and S.H. to Appellee Weaver.

{¶7}   On July 16, 2012, Appellant Nicely filed a notice of appeal. She herein raises the following five Assignments of Error:

{¶8}   "I.  THE TRIAL COURT ABUSED ITS DISCRETION OR ERRED AS A MATTER OF LAW IN GRANTING LEGAL CUSTODY OF THE MINOR CHILDREN TO APPELLEE, WHO IS A NON-PARENT, WHEN APPELLEE FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT MOTHER WAS UNFIT.

{¶9}   "II. THE TRIAL COURT ABUSED ITS DISCRETION OR ERRED AS A MATTER OF LAW WHEN IT USED FACTS NOT IN EVIDENCE AS A BASIS FOR GRANTING LEGAL CUSTODY TO APPELLEE.

**{¶10}** "III. THE TRIAL COURT ABUSED ITS DISCRETION OR ERRED AS A MATTER OF LAW IN NOT BIFURCATING THE FITNESS AND BEST INTEREST PORTIONS OF THE TRIAL.

**{¶11}** "IV. THE TRIAL COURT ABUSED ITS DISCRETION OR ERRED AS A MATTER OF LAW BY GRANTING LEGAL CUSTODY OF THE MINOR CHILDREN TO APPELLEE WITHOUT MAKING FINDINGS REGARDING THE BEST INTERESTS OF THE MINOR CHILDREN.

**{¶12}** "V. THE TRIAL COURT ERRED BY GRANTING LEGAL CUSTODY OF THE MINOR CHILDREN TO A NON-PARENT AS SUCH A DECISION WAS AGAINST THE MANIFEST WEIGHT OR SUFFICIENCY OF THE EVIDENCE."

I.

**{¶13}** In her First Assignment of Error, appellant-mother contends the trial court erred in granting legal custody of C.H. and S.H. to appellee on grounds of parental unfitness. We disagree.

**{¶14}** In a custody dispute between a parent and non-parent which originates in a juvenile court pursuant to R.C. 2151.23, the trial court must find the parent unsuitable prior to awarding custody to a non-parent. *In re Miley*, Jefferson App.No. 99JE42, 2001-Ohio-3343, citing *Reynolds v. Goll* (1996), 75 Ohio St.3d, 121, 123. As an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA–5758, 1982 WL 2911. Because custody issues are some of the most difficult and

agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶15} In the case sub judice, the trial court heard testimony and/or reviewed written reports from, among others, Appellee Weaver (the former foster parent of the boys), Fonda Kandel-Crowley (a certified day care provider for the boys), Angela Rutter (also a certified day care provider for the boys), Mary Ann Belanger (a sexual assault exam nurse), Robin Tener, Ph.D. (psychologist), Steve Dean, Ph.D. (psychologist), Holly Alexander (a professional clinical counselor), Alyssa Edgein (a pediatric nurse), Phil Heagerty (a Melymbrosia counselor) and Aimee Thomas, Ph.D. No evidence was presented that either child suffered any abuse while they were in foster care until they began unsupervised visits with appellant in 2006. After they began the visits, and since they have again lived in appellant's home, the children have reported sex abuse and/or physical abuse concerns to a number of the above caregivers and professionals.

{¶16} Dr. Tener, for example, produced a twenty-page evaluation in 2009 in which she concluded that the two areas of consistency in the children's allegations were centered on possible sexual abuse against C.H. by Tom (appellant's then-boyfriend) and excessive physical punishment on both boys with a belt. See Appellant's Appendix C. In addition, Alyssa Edgein, RN, CNP conducted an examination of the boys in 2009 and reported her concerns of sexual and physical abuse, as well as a scar on C.H.'s

penis consistent with a bite injury. See Tr., October 14, 2009, at 24-26. Holly Alexander, a professional clinical counselor, testified that the children have implicated appellant as a perpetrator of sexual abuse, that they do not want to visit with her, and that they are confused and afraid. See Tr., October 21, 2010, at 5-7. Fonda Kandel-Crowley, a day care provider, testified that she had observed belt marks on the boys. See Tr., October 14, 2009, at 45. Dr. Aimee Thomas, in her 2011 report, opined that appellant had "grossly minimized the seriousness of the allegations regarding the alleged sexual abuse of the children," and Dr. Thomas "believe[d] [C.H. and S.H.] were sexually abused when in her care." Appellant's Appendix D at 17; Tr., Dec. 13, 2011, at 30. She further opined that the boys "were traumatized by their mother's lifestyle choices and her paramours." Appendix D at 24.

{¶17} Appellant asserts that she was not generally accused of being the perpetrator and that neither Stark County's nor Wayne County's children services authorities again intervened in the matter after 2007. However, upon review of the extensive testimony and professional reports in this matter, we conclude the trial court did not abuse its discretion in concluding appellant is an unsuitable parent based on her documented failure to protect her children from abuse.

{¶18} Appellant's First Assignment of Error is overruled.

II.

{¶19} In her Second Assignment of Error, appellant-mother argues the trial court committed reversible error by allegedly relying on facts not in evidence. We disagree.

{¶20} The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180. As a general rule, all

relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in regard to the disputed evidence. *State v. Oman* (Feb. 14, 2000), Stark App.No. 1999CA00027.

**{¶21}** In the case sub judice, the trial court indicated that it did not intend to retry the issues already decided in Wayne County, particularly issues related to the pre-March 2007 period. *See, e.g.*, Tr., Sept. 16, 2009, at 20. Appellant herein points out, however, that the trial court referenced evidence, in its findings of fact, which did pertain to pre-March 2007 events. This included testimony by appellee as to some of the Wayne County allegations, by Fonda Crowley as to child care during the Wayne County period, and by Mary Ann Belanger as to an examination of the boys in February 2007.

**{¶22}** Appellee maintains in response that, at least at some points, there was a lack of objection by appellant to this evidence on the specific basis that it fell outside of any time parameters. In fact, some of the Wayne County documents became part of exhibits to which appellant stipulated. However, irrespective of what objections have been raised, it is often beneficial for all parties and the trier of fact in child custody hearings to incorporate a limited quantity of such prior evidence for purposes of establishing a history of the case and laying a foundation for more up-to-date evidence. In addition, in a bench trial, a trial court judge is presumed to know the applicable law and apply it accordingly. *Walczak v. Walczak,* Stark App.No.2003CA00298, 2004–Ohio–3370, ¶ 22, citing *State v. Eley* (1996), 77 Ohio St.3d 174, 180–181, 672 N.E.2d 640. In this instance, the trial court is thus afforded the presumption that it was capable

of distinguishing the pre-2007 foundational information from the main body of evidence in reaching its decision.

**{¶23}** Accordingly, appellant's Second Assignment of Error is overruled.

III.

**{¶24}** In her Third Assignment of Error, appellant-mother contends the trial court erred by inadequately bifurcating the parental fitness and best interest portions of the trial. We disagree.

**{¶25}** In *In re Perales* (1977), 52 Ohio St.2d 89, 369 N.E.2d 1047, the Ohio Supreme Court addressed child custody proceedings between a parent and a nonparent, holding as follows at the syllabus: "In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability-that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." In *In re Hockstok,* 98 Ohio St.3d 238, 781 N.E.2d 971, 2002–Ohio–7208, syllabus, the Ohio Supreme Court held that a trial court must make a parental-unsuitability determination on the record before awarding legal custody to a nonparent. A determination of unsuitability must be supported by a preponderance of the evidence. *Id.* at ¶ 17, 781 N.E.2d 971. We have recognized that "[t]o blend or compromise the first and prerequisite step [of *Perales*] with the second step in the process is improper." *In re Self*, Stark App.No. 2004CA00199, 2004-Ohio-6822, ¶ 9.

{¶26} We first note appellee's response that appellant failed to raise an objection that the court was not properly bifurcating the proceedings. See Appellee's Brief at 25. Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he or she invited or induced. *He v. Zeng,* Licking App. No. 2003CA00056, 2004-Ohio-2434, 2004 WL 1077912, ¶ 13, citing *State v. Bey* (1999), 85 Ohio St.3d 487, 493, 709 N.E.2d 484. However, at the September 16, 2009, hearing, appellant's trial counsel did raise an objection that "best interest" testimony was premature. See Tr. at 43. Nonetheless, the trial court in the case sub judice generously provided multiple hearing opportunities for the parties in this dispute, and we are unpersuaded that the court in any way confused the evidence regarding suitability with the evidence regarding best interests.

{¶27} Appellant's Third Assignment of Error is overruled.

IV.

{¶28} In her Fourth Assignment of Error, appellant-mother contends the trial court erred in granting legal custody of C.H. and S.H. to appellee without making adequate "best interest" findings. We disagree.

{¶29} R.C. 2151.23(F)(1) directs that a juvenile court shall exercise its jurisdiction in child custody matters in accordance with, inter alia, R.C. Section 3109.04. In determining the best interest of a child in custody matters, the court is to consider all relevant factors, including, but not limited to those set forth under R.C. 3109.04(F)(1). However, there is no requirement that a trial court separately address each factor enumerated in R.C. 3109.04(F)(1). *In re Henthorn,* Belmont App. No. 00-BA-37, 2001-Ohio-3459. Absent evidence to the contrary, an appellate court will presume the trial

court considered all of the relevant "best interest" factors listed in R.C. 3109.04(F)(1). *Id.,* citing *Evans v. Evans* (1995), 106 Ohio App.3d 673, 677, 666 N.E.2d 1176.

**{¶30}** In the case sub judice, the trial court appointed Attorney Rob Abney as the guardian ad litem to investigate the issues and make a recommendation based on his investigation as to the best interests of the children. *See* Superintendence Rule 48. Abney concluded, inter alia, that appellant "chooses inappropriate paramours and puts their desires and needs before her children's own needs and safety." GAL Report at 17. The trial court ultimately determined that "[b]ased upon the entire record and also upon the recommendation of the guardian ad litem," it would be in the best interests of C.H. and S.H. that legal custody be awarded to appellee. See Judgment Entry, June 14, 2012, at 1.

**{¶31}** Upon review, and pursuant to the rule of law set forth in *Henthorn*, supra, we do not find the existence of reversible error on the issue of "best interests" under these circumstances.

**{¶32}** Appellant's Fourth Assignment of Error is overruled.

V.

**{¶33}** In her Fifth Assignment of Error, appellant-mother challenges the trial court's grant of legal custody as not being supported by sufficient evidence or as being against the manifest weight of the evidence.

**{¶34}** Our standard of reviewing the sufficiency of the evidence in a civil case is whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is supported by competent and credible evidence. *Moran v. Gaskella*, Knox App.No. 2011–CA–21, 2012-Ohio-1158, ¶ 12, citing *Technical Constructions v. Cooper,*

Cuyahoga App.No. 96021, 2011–Ohio–5252, at ¶ 14. In regard to the manifest weight standard in appellate review of civil cases, the Ohio Supreme Court, in *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179, reiterated the following: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Id.* at 334, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Generally, a civil judgment which is supported by competent and credible evidence may not be reversed as against the manifest weight of the evidence. *See State v. McGill*, Fairfield App.No. 2004–CA–72, 2005–Ohio–2278, ¶ 18. However, a reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Hunter v. Green,* Coshocton App.No. 12-CA-2, 2012-Ohio-5801, ¶ 25, citing *Eastley, supra.*

{¶35} In light of our previous analysis and holdings in the within opinion, we find no merit in appellant's additional arguments as to sufficiency and manifest weight of the evidence.

{¶36}  Appellant's Fifth Assignment of Error is therefore overruled.

{¶37}  For the reasons stated in the foregoing opinion, the decision of the Court

of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.


By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.


_____


_____


_____

                                                        JUDGES

JWW/d 0328

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

MARY NICELY                                   :
                                              :
         Appellant                            :
                                              :
-vs-                                          :            JUDGMENT ENTRY
                                              :
LINDA WEAVER                                  :
                                              :
         Appellee                             :            Case No. 2012 CA 00134


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.

Costs assessed to appellant.


                                              _____

                                              _____

                                              _____
                                                          JUDGES